## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **Tobias Ward and Teresa Ward,** individually and as parents and next friends of T.W., their minor child; **T.W.**, a minor child**; Ronald Brookshire and Debra Brookshire,** individually and as parents and next friends of Ai.B and Ao.B., their minor children, and D.S., Debra's minor child**; Ai.B.,** a minor child; **Ao.B.,** a minor child; **D.S.,** a minor child; **Amy Spencer,** individually and as parent and next friend of Ax.E and Ah.E., her minor children; **Ax.E,** a minor child; and **Ah.E.,** a minor child,<br><br>                                 Plaintiffs,<br><br>v.<br><br>**Philana Harrell**, in her personal capacity; **Kimmerce Fairley**, in her personal capacity; **Carolyn O'Banner**, in her personal capacity; **Denise Krum**, in her personal capacity; **Lana Hoda**, in her personal capacity; **Shirease Anderson**, in her personal capacity; **Joy Richardson Harris**, in her personal capacity; **Mary Louis Castello**, in her personal capacity; **Patricia Burleson**, in her personal capacity; **Anita Twiner**, in her personal capacity; **Angela Fountain**, in her personal capacity; **Angela Bower**, in her personal capacity,<br><br>                                 Defendants | Case/Docket No.1.17cv187 HSO-JSG<br><br><br>Civil Action— Damages<br><br><br>**AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs were traveling home to Georgia from a church conference in Louisiana when Defendant social workers wrongfully and unreasonably removed their children under color of state law and refused to give them back for between 77 and 148 days without just cause. This case is a civil action commenced pursuant to 42 U.S.C. § 1983 to redress the deprivation by Defendants of rights secured to Plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution.

**JURISDICTION AND VENUE**

1.  The Plaintiffs, Tobias and Teresa Ward and their minor child, who reside in Riverdale, Georgia; Ronald and Debra Brookshire and their minor children, who reside in Riverdale, Georgia; and Amy Spencer and her minor children, who reside in Atlanta, Georgia, bring this civil rights lawsuit pursuant to 42 U.S.C. § 1983 to redress the deprivation, by the Defendants under color of state law, of rights secured to them under the Fourth and Fourteenth Amendment to the United States Constitution.

2.     Jurisdiction is conferred on this court by 28 U.S.C. § 1343(3) and 1343(4), which provide for original jurisdiction in this court of all suits brought

pursuant to 42 U.S.C. § 1983; and by 28 U.S.C. § 1331(a) because the cause of action arises under the Constitution and laws of the United States.

3.  Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in this federal district.

## PARTIES

4.  Plaintiffs, Tobias Ward and Teresa Ward are United States citizens who reside in Riverdale, Georgia. They are the parents and next friends of T. W., a minor child. Plaintiff T.W. was 12 at the time she was seized.  Plaintiff, T.W. brings this action by and through her next friends and parents, Tobias Ward and Teresa Ward.

5.  Plaintiffs, Ronald and Debra Brookshire are United States citizens who reside in Riverdale, Georgia. They are the parents and next friends of Ai.B. and Ao.B, and Debra is the parent and next friend of D.S., minor children. Plaintiffs Ai.B. and Ao.B. were 6 and 2 at the time they were seized. The Plaintiff, Ai.B brings this action by and through her next friends and parents, Ronald Brookshire and Debra Brookshire.  The Plaintiff, Ao.B brings this action by and through her next friends Ronald and Debra Brookshire.  Plaintiff, D.S. was 15 at the time she was seized. The Plaintiff, D. S. brings this action by and through her next friend and mother, Debra Brookshire.

3

6. Plaintiff, Amy Spencer is a United States citizen who resides in Atlanta, Georgia. She is the parent and next friend of Ax.E. and Ah.E., minor children. Plaintiffs, Ax.E. and Ah.E. were 14 and 10 at the time they were seized. The Plaintiff, Ax.E., brings this action by and through her next friend and mother, Amy Spencer.  The Plaintiff, Ah.E., brings this action by and through her next friend and mother, Amy Spencer.

7. Defendant, Philana Harrell, was a social worker employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

8. Defendant, Kimmerce Fairley, was a social worker employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

9. Defendant, Carolyn O'Banner, was a social worker supervisor employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

10. Defendant, Denise Krum, was a social worker supervisor employed by the Harrison County Department of Human Services and was at all pertinent times

herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

11. Defendant, Lana Hoda, was a social worker supervisor employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

12. Upon information and belief, the Defendant, Shirease Anderson, was a social worker employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

13. Upon information and belief, the Defendant, Joy Richardson Harris, was a social worker employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

14. Defendant, Mary Louis Castello,  was a social worker employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

15. The Defendant, Patricia Burleson, was a social worker employed by the Harrison County Department of Human Services and was at all pertinent times

herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

16. Defendant, Anita Twiner, was a social worker district supervisor employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

17. Defendant, Angela Fountain, was a social worker employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

18. Defendant, Angela Bower, was a social worker employed by the Harrison County Department of Human Services and was at all pertinent times herein on or about its business in the course and scope of her employment. She is sued in her personal capacity only.

## FACTS

19. On Wednesday, July 23, 2014, Plaintiffs and other members of Restoration New Life Church were returning home to Atlanta from a semi-annual church conference in Baton Rouge, put on by the World Link of Churches and Ministries.

20. There were about 60 people, including adults, teens, and children as young as 4 months old with their parents and/or guardians.

21. The Restoration church group is a tight-knit community that includes numerous relatives.

22. Dr. Adelia Seymour, the founder of Restoration New Life Church, is the mother of Plaintiff Amy Spencer, the mother of Plaintiff Ronald Brookshire, and the "spiritual mother" and cousin of Plaintiff Tobias Ward.

23. Dr. Seymour is the grandmother of Debra Brookshire's and Amy Spencer's children. She views herself as the grandmother of Teresa Ward's daughter, and Plaintiff Amy Spencer and Amy's children live with her.

24. On the trip home to Atlanta, Dr. Seymour experienced a medical emergency and was admitted to the hospital in Gulfport, Mississippi.

25. Some of the church members continued home to Atlanta, but Plaintiffs and several others stayed in Gulfport while Dr. Seymour underwent surgery for an obstructed intestine.

26. Plaintiffs obtained rooms at the Sleep Inn, 10393 Hwy 49, Gulfport, MS.

27. On Thursday, July 24, Plaintiffs Tobias and Teresa Ward left their daughter in the custody of church member Ms. Jeannine Leftridge and traveled back to Baton Rouge to pick up luggage that had been inadvertently left behind.

28. That same day, several of the teens who were staying at the Sleep Inn asked permission from Ms. Jeannine Leftridge to go outside and attempt to seek donations for new costumes for the church's dance team, which was scheduled to participate in a competition when they returned to Atlanta.

29. Ms. Leftridge, an evangelist with Restoration New Life Church and a person who had been assigned to supervise the teens, gave them permission to do so.

30. Approximately 5 children ranging from age 16 to 8 went out as a group to seek donations for the church's dance team. They raised approximately $10-20 before the police took them into custody.

31. Upon information and belief, someone complained to the police that the teens were asking for money.

32. Officers with the Gulfport Police Department took the children to the police station.

33. Neither the children nor the parents or guardians were ever charged with any crime or offense relating to the children seeking donations.

34. Plaintiff Amy Spencer and Plaintiff Debra Brookshire left the hospital where they had been sitting with Dr. Seymour before surgery and went to the police station to get the children.

35. Defendant Philana Harrell of Harrison County Department of Human Services (DHS) met Plaintiff parents at the police station.

36. Defendant Harrell told Plaintiff Spencer that her daughters were out "panhandling."

37. Defendant Harrell told her that she needed proof that Spencer was the mother of Ax.E. and Ah.E.

38. Plaintiff Spencer showed Defendant Harrell ID cards issued within the past year for the two girls, a birth certificate for one of them, and their Social Security cards.

39. When Defendant Harrell would not release Spencer's daughters to her, Spencer objected vigorously and loudly and was taken into custody for disorderly conduct. The charge was later dismissed.

40. Defendant Harrell called Teresa Ward while Teresa was about half an hour away from Gulfport on her way back from Baton Rouge.

41. Defendant Harrell told Teresa that her daughter was out "panhandling."

42. Defendant Harrell said that she was trying to find out who and where the parents of the children were.

43. Defendant Harrell told Teresa to bring her daughter's birth certificate and Social Security card to the police stations.

44.Defendant Harrell told Teresa that she would release her daughter into the custody of her aunt, Plaintiff Amy Spencer.

45.Twenty minutes later, Defendant Harrell called Teresa again and said that no children would be released, because there were "too many conflicting stories."

46.Defendant Harrell never explained what she meant by "too many conflicting stories."

47.Although Plaintiff Debra Brookshire was originally allowed in the room to be with her nieces, Defendant Harrell then told her that she was taking all the children into custody.

48.Debra was then sent out of the police station.

49.Defendant Harrell asked Debra if she had any children of her own, and Debra said that she had three, who were with her husband at the hotel.

50.Plaintiff Brookshire's three children were at the Sleep Inn with Plaintiff Ronald Brookshire, where they had stayed all day. None of them had been involved with seeking donations for the church's dance team.

51.Defendant Harrell and other caseworkers from DHS then descended upon the Sleep Inn, accompanied by numerous police officers.

52.One of the Sleep Inn employees was smoking marijuana on the stairs near where the Plaintiffs were staying, which left a faint marijuana odor in the area.

53.None of the Plaintiffs were using illegal drugs of any kind.

54. Defendant Harrell and the police officers with her began searching the families' rooms, including their luggage.

55. Defendant Harrell told Plaintiff Debra Brookshire that she had a warrant and an order from a judge to take all the other children into custody.

56. None of the Plaintiffs saw either a warrant or an order.

57. Debra asked why her children were being removed, because they had all been at the hotel all day with their father, Plaintiff Ronald Brookshire.

58. Defendant Harrell told Debra that DHS did not believe the children were hers.

59. Debra showed Defendant Harrell a photo ID card for her 14-year-old daughter D.S., and pictures of her two younger children that she had in her wallet.

60. Defendant Harrell told Debra that that was not good enough.

61. After the children had been taken, Debra called Defendant Harrell about 11:00 p.m. and asked her what DHS needed for proof that the children were theirs.

62. Defendant Harrell told the Plaintiff parents that they all needed to present her with proof of their children's identification, including birth certificates and Social Security cards, and that then she would release the children.

63. When the police discovered 2 Flexeril muscle relaxant pills in Plaintiff Amy Spencer's backpack, she was charged with drug possession. That charge was

later dropped when she completed classes through Abacus D.U.I. School in Atlanta.

64. Plaintiffs Ronald and Debra Brookshire drove through Thursday night and Friday morning from Gulfport to Atlanta and back again to obtain their children's birth certificates and Social Security cards.

65. Plaintiff Debra Brookshire also brought back family pictures from her home.

66. Plaintiff Debra Brookshire also brought back identification for the Wards.

67. Plaintiff parents met with Defendant Harrell and other DHS Defendants late Friday afternoon.

68. Plaintiff parents presented identification for all the children in DHS custody, which included family pictures, Social Security cards, and birth certificates.

69. Defendants refused to release the children to their parents, even though they all presented proof that their children were in fact their children.

70. Defendant Harrell said that she had decided to keep all the children in custody because she felt that the children had been stolen and were being trafficked.

71.Defendant O'Banner told Plaintiff Debra Brookshire that "you do not know who you're dealing with, but if you want to get your kids back, you need to leave that church group."

72.Defendant Harrell told Plaintiff Tobias Ward that since his name was not on his daughter T.W.'s birth certificate, she would not listen to anything he said.

73.Defendant Harrell told Tobias that she had numerous addresses for the children that "she could not confirm." Every time she told him this, she would give him an increasing number, beginning with 12 and eventually ending at 21.

74.Defendant Harrell told the parents that the addresses on the birth certificates did not match their current addresses, so she would not return the children, and that she would "do further research."

75.Defendant Harrell told the parents verbally that there would be a court hearing "next Wednesday or Thursday."

76.Upon information and belief, Defendant Harrell took a personal dislike to several of the children who would only answer her questions by telling her to talk to their parents.

77.Defendant Harrell never gave the parents written notice of the hearing.

78.In fact, the court hearing was scheduled for Tuesday.

79.At this point, the Plaintiff parents realized that Defendant Harrell was not being honest with them.

80. Defendant Harrell insisted that if the parents got background checks and were fingerprinted, that would help in getting their children back.

81. On Friday, July 25, Defendant Harrell entered Dr. Seymour's hospital room with several police.

82. Dr. Seymour was on morphine and partially sedated as she recovered from her emergency surgery.

83. Defendant Harrell said, "What is going on with the children in your group?"

84. Dr. Seymour said that as far as she knew, some of the children were at a local hotel, and some had returned home to Georgia.

85. Defendant Harrell then revealed that they had taken custody of the children.

86. Defendant Harrell told Dr. Seymour, "We need you to tell us whatever you know what's going on," but she would not give her any information about the case.

87. Defendant Harrell told Dr. Seymour that they believed the children were being trafficked.

88. Over the weekend, several of the Plaintiff parents hired an attorney to find out from DHS what was required to regain custody of their children.

89. The attorney found out that the hearing was scheduled for Tuesday, not Wednesday or Thursday as Defendant Harrell had told the parents.

90. On Tuesday, July 29, hearings were held in case numbers 24-YC-2014-P-1321 (T.W.); 24-YC-2014-P-1291 (Ai.B.); 24-YC-2014-P-1293 (Ao.B.); 24-YC-2014-P-1329 (Ax.E.); and 24-YC-2014-P-1330 (Ah.E.).

91. Defendants Harrell, Harris, Anderson, Krum, Hoda, Burleson, Fairley, and O'Banner misrepresented to the court that there was doubt about the parents' relationships to their children.

92. Defendant Harrell, Harris, Anderson, Krum, Hoda, Burleson, Fairley, and O'Banner misrepresented to the court that the children were in imminent danger.

93. Because of Defendants' misrepresentations, the court did not allow any of the Plaintiff children to be returned to the custody of Plaintiff parents.

94. The court instead ordered Defendant Harrell to conduct background checks on Plaintiff parents.

95. Plaintiff parents returned to Atlanta without their children.

96. Plaintiff children were placed in foster care.

97. Upon information and belief, Defendant Harrell falsely reported to the FBI that Plaintiffs were involved in human trafficking and drug smuggling.

98. FBI investigators visited Apostle Dr. Lloyd Benson, the founder of World Link of Churches and Ministries in Baton Rouge, and claimed the Plaintiffs were trafficking children.

99. FBI investigators questioned two other church members in Georgia about the false claim of child trafficking.

100.   One month later, on August 27, another hearing was held for all Plaintiff parents.

101.   When Plaintiffs Debra Brookshire and Amy Spencer arrived at the courthouse, they were accosted by FBI investigators.

102.   The FBI investigators took each of the women into separate rooms and interrogated them for over half an hour.

103.   The FBI investigators started by asking both of them, "How long have you been trafficking kids?"

104.   The FBI investigators accused the women of selling drugs.

105.   None of the Plaintiffs have ever trafficked children or sold drugs.

106.   The FBI investigators interrogated the women about the funding of their church, how the hotel in Gulfport had been paid for, and how they could afford the vehicles that they were driving.

107.   After the court hearing, the FBI investigators physically checked the inside and outside of the RV that the Plaintiffs had driven to the hearing.

108.   Plaintiffs have never heard anything more from the FBI.

109.   The records in the juvenile cases were subpoenaed by a Federal Grand Jury in March 2015.

110.   The FBI never filed any charges against Plaintiffs.

111.   Before the hearing on August 27, Defendant Harrell and the FBI investigators met with the biological fathers of several of the children, neither of which had custody of the children nor lived with them.

112.   At the hearing, Defendants Harrell, Hoda, Castello, and O'Banner continued to make misrepresentations to the court about the "imminent danger" the children were in.

113.   Once again, the court did not allow any of the Plaintiff children to be returned to the custody of Plaintiff parents.

114.   The next hearing was on September 3.

115.   At the September hearing, Defendants Harrell and Castello continued to make misrepresentations to the court about the "imminent danger" the children were in.

116.   Defendant Harrell told the court that Plaintiff Debra Brookshire had "lots of felonies" on her record.

117.   Because Defendant Harrell had made this false claim before, Plaintiff Debra Brookshire had brought a copy of a police background check to court.

118.   Plaintiff Debra Brookshire showed the court that she in fact had no felonies on her record.

119.   Defendant Harrell claimed that Plaintiff Ronald Brookshire was a convicted felon and that the children could not safely be released into his care.

120.   Plaintiff Ronald Brookshire had one felony conviction from ten years before for writing a bad check.

121.   Plaintiff Ronald Brookshire has no violent criminal history.

122.   Plaintiff Amy Spencer's children were removed from foster care and placed in the custody of their biological father.

123.   Plaintiff Debra Brookshire's daughter D.S. was removed from foster care and placed in the custody of her biological father, who had previously been accused of child molestation and had been discharged from his job as a police officer.

124.   Upon information and belief, Defendant Harrell then began and conducted a romantic relationship for the next several months with D.S.'s father, including sleeping with him in the same room as D.S.

125.   Upon information and belief, Defendant Harrell bought gifts for D.S. while she was in her father's custody.

126.   Defendant Harrell dropped her claim that Plaintiffs Tobias and Teresa Ward were not the parents of Plaintiff T.W.

127.   Defendant Harrell now claimed that since neither Plaintiffs Tobias nor Teresa Ward had current driver's licenses, their children could not safely be released to them.

128.   In fact, the Wards did not own a car. Several members of the church had driven the Wards to Gulfport and were prepared to drive them back if their daughter was returned.

129.   Defendant Harrell also claimed that their daughter could not be safely released because Plaintiff Tobias Ward had an outstanding warrant.

130.   As Defendant Harrell well knew, the warrant was for an unpaid motor vehicle ticket in 1998.

131.   The Wards' daughter was kept in foster care rather than being released to her parents.

132.   Plaintiff Spencer's children were not released back to her; instead, they were released to their biological father Adrian.

133.   On the advice of their counsel, Plaintiffs Ronald and Debra Brookshire began living separately.

134.   The Wards were allowed to visit their daughter in September. However, when they had been driven the 6 hours from their home in Atlanta, Harrell called and cancelled the visitation. She never rescheduled.

135.   Debra Brookshire was allowed to visit her children in September. However, twice when she had driven the 6 hours from her home in Georgia, Harrell called and cancelled the visitations. They were never rescheduled.

136.   The next hearing was over a month later, on October 9.

137.   Plaintiffs Ronald and Debra Brookshire argued that since they were living separately, their children should be released to Debra.

138.   Defendant Harrell objected vigorously.

139.   The court ordered that the children could go home with Debra.

140.   Defendant Harrell then began crying and telling the court that it was making a terrible mistake.

141.   Debra Brookshire finally got to take her children Ai.B. and Ao.B. home that evening.

142.   Due to Defendant Harrell's actions, Plaintiffs Ai.B. and Ao.B. had been separated from their mother for 77 days.

143.   At the October hearing, Plaintiffs Tobias and Teresa Ward offered no further evidence of their relationship with their daughter beyond what they had already provided.

144.   Despite Defendant Harrell's objections, the court released T.W. to the custody of her parents, under the condition that until March 15, 2015, she had to attend public school regularly and go to all scheduled doctor's visits.

145.   Due to Defendant Harrell's actions, Plaintiff T.W. had been separated from her parents for 77 days.

146.   When Plaintiff Amy Spencer got to the courthouse for the October 9 hearing, she was required to take a drug test at the courthouse because of the charge that she had illegally possessed Flexeril.

147.   Upon information and belief, drug tests are usually conducted at A.S.A.P. Drug Testing Services (2205 23rd Ave., Gulfport, MS) rather than the courthouse.

148.   The test came back positive for the presence of THC (marijuana).

149.   Spencer had not used marijuana at any time after the children were removed.

150.   Defendant Harrell claimed that Spencer's daughters could not safely be returned to the custody of their mother due to the positive drug test.

151.   Plaintiff Amy Spencer visited her physician Dr. Alfonso Findley to discuss the false positive test and to determine whether there was a health problem that had caused the wrong result.

152.   On October 21, 2014, an attorney for several of the families wrote to Judge Alfonso, describing problems with Defendant Harrell's lack of "objectivity."

153.    The attorney noted many instances where Defendant Harrell had lied to the Plaintiff children, criticized the parents to their children, and told the children that their parents did not want them anymore.

154.    Judge Alfonso took the unusual step of forwarding the letter to Anita Twiner, the Regional Director of Harrison County DHS and suggesting that "to avoid any appearance of impropriety you should consider a change" in the worker handling the cases.

155.    Judge Alfonso noted that the attorney's letter "brings into question the integrity of our joint processes."

156.    Despite the judge's recommendation, Defendant Harrell refused to remove herself from the case.

157.    The next hearing was held two months later, on December 4.

158.    When Plaintiff Amy Spencer arrived at the courthouse for the hearing, she was required to take another drug test.

159.    The test came back positive for the presence of marijuana.

160.    Spencer had not used marijuana since the last hearing in October.

161.    On the advice of her counsel, Spencer immediately went to A.S.A.P. Drug Testing Services and took another drug test.

162.    That test came back negative for any drugs.

163.   When Spencer returned to the courthouse for her hearing, she presented the results of her "clean" test.

164.   Defendants Harrell, Fountain, Twiner, and O'Banner still objected to releasing Spencer's children to her.

165.   The court issued an order on December 9, 2014, placing the children back with their mother Spencer.

166.   However, it was not until a week later that Spencer's attorney was contacted with the news that Spencer could pick up her children and take them home when the public-school semester was completed.

167.   On December 19, Plaintiff Spencer picked up her children and brought them home.

168.   Due to Defendant Harrell's actions, Plaintiffs Ax.E. and Ah.E. had been separated from their mother for 148 days.

169.   Upon information and belief, Defendant Harrell was terminated from her job with Mississippi Department of Human Services on December 22, 2014.

170.   When Defendants seized Plaintiff T.W. and kept her away from her parents for 77 days, Plaintiff Tobias Ward suffered severe emotional distress. He felt lost, because as a father, he was not even allowed to be with his daughter on her 13th birthday. He felt that his authority as the man of the family had been stripped away.

171.   When Defendants seized Plaintiff T.W. and kept her away from her parents for 77 days, Plaintiff Teresa Ward suffered severe depression. She missed her daughter's 13th birthday; Defendant Harrell would not even allow her to call on her birthday. When her daughter was returned, the entire family went into counseling for several months.

172.   When Defendants seized Plaintiff T.W. and kept her away from her parents for 77 days, she was kept in foster care the entire time. She felt that the foster parents were neglectful to her, and abusive to other children that they were fostering. There was at least one instance where the foster parents masturbated in front of her. When she returned, she was treated by a child psychologist for several months, who found that she was traumatized. Even today, she suffers from headaches and blackouts at school because she keeps thinking of what happened. She always wanted to be with an adult when she got home, and never wanted to be left alone.

173.   When Defendants seized Plaintiffs Ai.B and Ao.B and kept them away from their parents for 77 days, Plaintiff Debra Brookshire began experiencing high blood pressure. This was the first time that she had had a problem with blood pressure in her life. During the entire time that they were away, she got very little sleep. She feels that the incident has tainted her relationship with her children. Her

husband Ronald had to leave the family home for a time just so they could get their children back.

174.   When Defendants seized Plaintiffs Ai.B and Ao.B and kept them away from their parents for 77 days, Plaintiff Ronald Brookshire went into severe depression. He stayed in his room for almost a month, emerging only to eat. He describes it as the worst time of his life. He had to move out of their home so that the judge would see that he and Debra were living apart and return the children.

175.   When Defendants seized Plaintiffs Ai.B. and Ao.B. and kept them away from their parents for 77 days, they were kept in foster care. Defendant Harrell told them that their parents did not want them anymore. When they were finally returned, 2-year-old Ao.B. had to get medical attention because she was experiencing nightmares and bedwetting every night, and both girls were losing their hair. Both girls were very frightened from having to live away from their parents for so long. Three years later, they still remember the terror of being taken from the hotel, and they do not want to stay overnight in hotels.

176.   When Defendants seized Plaintiffs Ax.E and Ah.E. and kept them away from their mother for 148 days, Plaintiff Amy Spencer suffered significant depression. She stayed in her bed for days and would not even attend the church where she is a pastor. Even after she was granted weekly telephone calls, many of those were missed – she went an entire month without hearing from either of her

children. She had to pay to take drug abuse prevention classes and attend AA meetings, even though she was not on drugs or abusing alcohol.

177.   When Defendants seized Plaintiffs Ax.E and Ah.E. and kept them away from their mother for 148 days, they were kept in foster care at first, and then released to their biological father. Due to the neglect and abuse that they suffered while with him, they have chosen to cut off all relations with him after being returned. Upon information and belief, a report was made to Alabama Child Protective Services in March 2017 that their biological father had inappropriately touched them while they were in his custody, and a warrant has been issued for his arrest.

## FIRST CAUSE OF ACTION

### Violation of Fourth Amendment – Initial Seizure without Justification (Claimed by Plaintiffs T.W., Ax.E., and Ah.E. at the police station)

178.   The allegations contained in paragraphs 1 through 177 are hereby realleged and incorporated by reference herein.

179.   Defendants' seizure of the minor children T.W., Ax.E., and Ah.E. at the police station without a court order, parental consent, probable cause, or exigent circumstances violated the Plaintiffs' Fourth Amendment right to be secure against unreasonable seizure.

## SECOND CAUSE OF ACTION

**Violation of Fourteenth Amendment – Initial Seizure without Justification
(Claimed by Plaintiffs Tobias and Teresa Ward and Amy Spencer at the
police station)**

180.   The allegations contained in paragraphs 1 through 177 are hereby

realleged and incorporated by reference herein.

181.   Defendants' seizure of the minor children T.W., Ax.E., and Ah.E. at

the police station without a court order, parental consent, probable cause, or

exigent circumstances violated the Plaintiffs' Fourteenth Amendment right to the

care, custody, and control of their children.

## THIRD CAUSE OF ACTION

**Violation of Fourth Amendment – Initial Seizure Without Justification
(Claimed by Plaintiffs Ai.B. and Ao.B. at the hotel)**

182.   The allegations contained in paragraphs 1 through 177 are hereby

realleged and incorporated by reference herein.

183.   Defendants' seizure of the minor children Ai.B. and Ao.B. at the Sleep

Inn without a reasonable belief that they were abused or would suffer further abuse

if left in their parents' custody violated the Plaintiffs' Fourth Amendment right to

be secure against unreasonable seizure.

## FOURTH CAUSE OF ACTION

**Violation of Fourteenth Amendment – Initial Seizure without Justification
(Claimed by Plaintiffs Ronald and Debra Brookshire at the hotel)**

27

184.   The allegations contained in paragraphs 1 through 177 are hereby realleged and incorporated by reference herein.

185.   Defendants' seizure of the minor children Ai.B. and Ao.B. from the Sleep Inn without parental consent, probable cause, or exigent circumstances violated the Plaintiffs' Fourteenth Amendment right to the care, custody, and control of their children.

## FIFTH CAUSE OF ACTION

### Violation of Fourth Amendment – Unreasonable and Unjustified Continued Detention
### (Claimed by Plaintiffs T.W., Ax.E., Ah.E., Ai.B., and Ao.B.)

186.   The allegations contained in paragraphs 1 through 177 are hereby realleged and incorporated by reference herein.

187.   Defendants' continued detention of the minor Plaintiffs violated the Fourth Amendment. Their knowing misrepresentations to the court of the ongoing "danger" that the children were in were unconscionable and resulted in the minor Plaintiffs being unreasonably detained for between 77 and 148 days.

## SIXTH CAUSE OF ACTION

### Violation of Fourteenth Amendment - Continued Detention without Justification
### (Claimed by all Plaintiffs)

188.   The allegations contained in paragraphs 1 through 177 are hereby realleged and incorporated by reference herein.

189.   Defendants violated Plaintiffs' Fourteenth Amendment right to family integrity and privacy, in that they wrongfully separated minor Plaintiff T.W. from the custody and control of Tobias and Teresa Ward for 77 days, from July 24, 2014, until October 9, 2014, without probable cause, a medical emergency, or any other constitutional justification.

190.   Defendants violated Plaintiffs' Fourteenth Amendment right to family integrity and privacy, in that they wrongfully separated minor Plaintiffs Ai.B. and Ao.B. from the custody and control of Ronald and Debra Brookshire for 77 days, from July 24, 2014, until October 9, 2014, without probable cause, a medical emergency, or any other constitutional justification.

191.   Defendants violated Plaintiffs' Fourteenth Amendment right to family integrity and privacy, in that they separated minor Plaintiff Ax.E. and Ah.E. from the custody and control of Amy Spencer for 128 days, from July 24, 2014, until December 19, 2014, without probable cause, a medical emergency, or any other constitutional justification.

192.   Defendants violated Plaintiffs' Fourteenth Amendment right to family integrity and privacy, in that they deliberately and wrongfully kept changing the requirements of what DHS needed to return custody to the parents, viz. first, Defendant Harrell and others stated that Social Security cards would be sufficient; next, Harrell stated that she needed birth certificates for all the children; and when

the parents had provided both of those, she stated that she had to put all the parents

through a background check and drug testing before returning their children to

them.

193.   Plaintiffs allege that as a result of the violations of their civil rights

described above in Counts One through Six, each has suffered and will continue to

suffer for an as yet undetermined length of time the following:

      a.  Mental pain and suffering;

      b.  Emotional distress; and

      c.  Loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this court:

1) Award compensatory damages in favor of each of the individual Plaintiffs in
   an amount to be determined by the finder of fact in accordance with the
   proof, plus interest at the legal rate until paid;

2) Award punitive damages against Defendants for their conduct in willful and
   wanton disregard of the rights of the Plaintiffs in an amount to be
   determined by the finder of fact in accordance with the proof, plus interest at
   the legal rate until paid;

3) Award Plaintiffs costs and attorney's fees pursuant to 42 U.S.C. § 1988;

4) Grant the Plaintiffs such other relief as may be deemed just and proper; and

5)  Grant the Plaintiffs a trial by jury when the issues are joined.

Dated this 29th day of June, 2017.

Respectfully submitted,

Counsel for Plaintiffs

By: */S/ D. Scott Gibson,* _____
    D. Scott Gibson, MS Bar 8460
    Attorney at Law
    PO Box 1270
    Wiggins, MS 39577-1241
    Phone:   (601) 528-6028
    Fax:     (601) 528-6030
    scott@dscottgibsonlaw.com
    *Local Counsel*
    *Attorney for Plaintiffs*