**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**Ward, et al.**                                                           **PLAINTIFFS**

**v.**                                                    **No. 1:17cv187HSO-JCG**

**Harrell, et al.**                                                    **DEFENDANTS**

---

**MEMORANDUM SUPPORTING MOTION TO DISMISS [DOC. 29]**

---

Defendants, Carolyn O'Banner, ("O'Banner") in her personal capacity, Mary Louis Castello, ("Castello") in her personal capacity, Patricia Burleson, ("Burleson") in her personal capacity, Angela Bowie, ("Bowie") improperly named Angela Bower, in her personal capacity, Kimmonica Marks-Fairley ("Marks-Fairley"), improperly named Kimmerce Fairley, in her personal capacity, Anita Watkins, ("Watkins") improperly named Anita Twiner, in her personal capacity, Denise Morgan, ("Morgan"), improperly named as Denise Krum, in her personal capacity, Lana Hoda, ("Hoda") in her personal capacity,  Angela Fountain, ("Fountain") in her personal capacity, and Joy Richardson Harris, ("Harris") in her personal capacity (collectively "Defendants"), file this Memorandum in Support of Motion to Dismiss [Doc. 29].[1]

**I.**      **Introduction**

Plaintiffs allege a 42 U.S.C. § 1983-action against Defendants, claiming they  wrongfully and unreasonably seized their children under color of state law without just cause and unlawfully detained the children for period of almost two months and five months.  As a matter of law, Plaintiffs' Amended Complaint fails to allege sufficient facts to support a 42 U.S.C. § 1983 cause of action or overcome Defendants' qualified immunity and should be dismissed.  F.R.C.P. 12(b)(6).

---

[1]A summons has been issued as to Defendant Shirease Anderson. [Doc. 2] (Summons).  To date, Anderson has not been served the Summons and Amended Complaint.

## II.     Facts as alleged in the Amended Complaint.

Plaintiffs are several families who are members of Restoration New Life Church in Atlanta, Georgia: (a) Tobias and Teresa Ward and minor, T.W.; (b) Ronald and Debra Brookshire and minors, Ai.B. and Ao.B.; (c) Debra Brookshire and minor D.S. and (d) Amy Spencer and her minor children, Ax.E and Ah.E.  [Doc. 1](Complaint at ¶4, 21).  Defendants are employees and former employees of the Mississippi Department of Human Services ("MDHS").  Plaintiffs filed suit against Defendants on June 29, 2017, alleging as follows:

On Tuesday, July 23, 2014, Plaintiffs were returning home from a church conference in Baton Rouge, Louisiana when church member Adelia Seymour ("Seymour") had a medical emergency and was admitted to the hospital in Gulfport, Mississippi.  *Id*. at ¶ 24.  Plaintiffs obtained rooms at the Sleep Inn in Gulfport while Seymour was being treated.  *Id*. at ¶¶25-26.

On Wednesday, July 24, 2014, the Wards left their daughter, T.W., with an adult church member and traveled back to Baton Rouge to retrieve luggage accidentally left behind. *Id.* at ¶27.  Five of the children in the church group ranging in ages from eight to sixteen left the Sleep Inn to seek donations for "new costumes for the church's dance team."  *Id*. at ¶¶28, 30.  An unknown person complained to authorities about the children asking for money.  As a result, Gulfport police officers picked up the children and transported them to the police station.  *Id.* at ¶¶31-32.  MDHS was contacted and MDHS employee Philana Harrell ("Harrell") met with the children at the police station.  *Id.* at ¶35.  Plaintiffs Amy Spencer and Debra Brookshire, who had been with Seymour at the hospital, drove to the police station to get the children.  *Id*. at ¶34.

Plaintiffs allege Harrell explained to Amy Spencer that Ax.E. and Ah.E. were out "panhandling" and asked for proof from Spencer that she was Ax.E. and Ah.E's mother.  *Id.* at ¶¶36-37.  Plaintiffs allege Spencer gave Harrell identification cards issued for the two girls, a birth

certificate for one of them, and their Social Security cards but Harrell would not release the girls to Spencer. *Id.* at ¶38. Plaintiffs allege Harrell called Teresa Ward while she was returning to Gulfport, informing her that her daughter had been out "panhandling." *Id.* at ¶¶40-41. Harrell explained she was trying to determine who and where the parents of the children were and asked Teresa to bring her daughter's birth certificate and Social Security card to the police station. *Id.* at ¶¶42-43. According to Plaintiffs, Harrell informed Teresa she would release her daughter to Amy Spencer, but later explained that none of the children would be released because there were "too many conflicting stories." *Id.* at ¶45.

Plaintiffs allege Harrell asked Debra Brookshire if she had any children of her own, and Debra stated her three children were with her husband, Ronald Brookshire, at the Sleep Inn. *Id.* at ¶49. Later, Harrell and "other DHS caseworkers" met at the Sleep Inn accompanied by police officers. *Id.* at ¶51.[2] Plaintiffs allege Harrell explained that she had a warrant and an order from a judge to take the children into custody. *Id.* at ¶54. Plaintiffs allege they did not see the warrant or order. *Id.* at ¶56.[3] According to Plaintiffs, police officers began searching the families' rooms, including their luggage. *Id.* at ¶55. Plaintiffs contend that in the search, police discovered two muscle relaxer pills in Amy Spencer's backpack and charged her with illegal drug possession, a

---

[2]Defendant Harrell admits she and other MDHS child protection workers arrived at the Sleep Inn with police escorts pursuant to a verbal pick-up order from the Harrison County Youth Court. [Doc. 28] (Answer at ¶¶51, 54).

[3]Under Mississippi Code § 43-21-301, MDHS employees are required to obtain a custody order to take a child into MDHS custody. Harrell stated to Plaintiffs she had both a warrant and an order to place the children in MDHS custody. [Doc. 1](Complaint at ¶54). Pursuant to Mississippi Code § 43-21-355, a social worker, family protection worker, or family protection specialist who has reasonable cause to suspect that a child is a neglected child or an abused child and causes a report to be made or participates in the judicial proceeding resulting from the report of child abuse or child neglect "therefrom shall be presumed to be acting in good faith. Any person or institution reporting in good faith shall be immune from any liability, civil or criminal, that might otherwise be incurred or imposed."

charge that was later dropped. *Id*. at ¶63.  After asking for the reason for the children's removal, Plaintiffs claim Harrell explained that "DHS did not believe the children were hers." *Id.* at ¶¶57-58. Plaintiffs assert Debra Brookshire showed Harrell a photo identification card for her fourteen-year-old daughter D.S., and pictures of her two younger children which they claim Harrell refused to accept. *Id.* at ¶59.

After the children were in MDHS custody, Plaintiffs contend Debra Brookshire called Harrell to ascertain what proof MDHS required for the return of the children.  *Id.* at ¶61. According to Plaintiffs, Harrell explained she needed documents pertaining to the children's identity, including birth certificates and Social Security cards. *Id*. at ¶62. Plaintiffs allege that on Thursday, July 24, 2014, the Brookshires drove to Atlanta and back to obtain their children's birth certificates, Social Security cards, family photographs and identification material for the Ward children. *Id.* at ¶¶64-65.

On Friday, July 25, 2014, Plaintiffs allege they met with Harrell and "other MDHS Defendants" and they allege they presented their family photographs and identification for the children in MDHS custody.  *Id.* at 68.  Plaintiffs claim that despite the proof they presented, "MDHS" refused to release the children. *Id.* at ¶69.  Plaintiffs claim Harrell said the children needed to be kept in MDHS custody because "she felt that the children had been stolen and were being trafficked." *Id.* at ¶70.  Plaintiffs allege MDHS employee O'Banner told Debra Brookshire that "she didn't 'know who [she was] dealing with, but if you want to get your kids back, you need to leave that church group.'" *Id.* at ¶71.  Plaintiffs claim Harrell told Tobias Ward that because "his name was not on his daughter T.W.'s birth certificate, she would not listen to anything he said."  *Id.* at ¶72.  Plaintiffs allege Harrell explained she had different addresses for the children which were different from their birth certificates and could not be confirmed. *Id.* at ¶72.  Plaintiffs allege Harrell

explained further that additional research was required to confirm the identities and addresses of the Plaintiffs. *Id.* at ¶¶73-74. Plaintiffs allege Harrell informed them there would be a court hearing "next Wednesday or Thursday." Plaintiffs say they did not receive a written notice of the hearing. *Id.* at ¶75. Plaintiffs allege Harrell insisted that if the parents agreed to background checks and fingerprints, it would help in returning the children to them. *Id.* at ¶80.

Over the July 26-27, 2014 weekend, the parents hired counsel to help them regain custody of their children. *Id.* at ¶ 88. Plaintiffs contend Harrell was dishonest with them after the attorney learned the hearing was set for Tuesday, and not Wednesday or Thursday as Harrell had previously informed them. *Id.* at ¶¶78-79, 89.[4]

On July 29, 2014, hearings were held regarding each child at which Plaintiffs claim MDHS employees Harrell, Harris, Anderson, Morgan, Hoda, Burleson, Marks-Fairley, and O'Banner[5] misrepresented to the court that doubts existed "about the parents' relationships to their children." *Id.* at ¶91. Plaintiffs allege these MDHS employees also misrepresented to the court that the children were in imminent danger. *Id.* at ¶92. Plaintiffs contend that because of "Defendants' misrepresentations," the court did not permit the children to be returned to their parents and ordered Harrell to conduct background checks on Plaintiff parents. *Id.* at ¶93.[6]

---

[4]Based on the Plaintiffs' allegations about the Tuesday, July 29, 2014-hearings, it is clear that Plaintiffs attended and were present for the hearings before the youth court.

[5]With the exception of O'Banner about whom it was alleged she made a statement to Debra Brookshire, none of the moving Defendants have been alleged to have any involvement with the Plaintiffs at the police station or at the Sleep Inn. Harris, Anderson, Morgan, Hoda, Burleson, Marks-Fairley, and O'Banner are not alleged to have had conducted any investigations or handled the placement of the children.

[6]Regardless of these conclusory allegations, it is a reasonable assumption that the Youth Court Judge objectively determined there were legally justifiable reasons for the children to remain in MDHS custody and so ordered. Harrell admits that on July 29, 2014, the youth court entered an order granting legal custody of the minor children to MDHS and granting MDHS additional time to complete its investigation. [Doc. 29](Answer at ¶¶ 93-94). Harrell also admits that after MDHS was granted legal custody of the children, they

Plaintiffs assert Harrell falsely reported to the FBI that Plaintiffs were involved in human trafficking and drug smuggling. *Id.* at ¶97. Plaintiffs allege that based on Harrell's report, the FBI investigated the claims of human trafficking and drug smuggling and that Debra Brookshire and Amy Spencer were accosted and interrogated by FBI investigators when they arrived for the second hearing regarding the children on August 27, 2014. *Id.* at ¶¶98-99;101-102. Plaintiffs claim the FBI investigators accused them of selling drugs and questioned them about funding of their church, about payment of their hotel charges in Gulfport, and about how they afforded the vehicles they were driving. *Id.* at ¶106. Plaintiffs claim that no charges were brought against them. *Id.* at ¶110.

About the August 27, 2014-hearing, Plaintiffs allege MDHS employees Harrell, Hoda, Castello, and O'Banner misrepresented to the court that the children were in imminent danger, and that the court ordered the children to remain in MDHS custody. *Id.* at ¶¶112-113.[7] Plaintiffs contend these same "misrepresentations" were made by Harrell and Castello to the court at the September 3, 2014-hearing. *Id.* at ¶115.

Regarding the Brookshires, Plaintiffs allege Harrell falsely informed the court that Debra Brookshire had "lots of felonies" on her record. *Id.* at ¶117. Plaintiffs assert Debra Brookshire brought a copy of a police background check to the court showing she had no felonies on her record. *Id.* at ¶118. Plaintiffs allege Harrell claimed Ronald Brookshire was a convicted felon such that the children could not safely be released into his care. *Id.* at ¶119. Plaintiffs contend Ronald Brookshire has one, ten-year-old felony conviction stemming from a bad check and has no violent criminal history. *Id.* at ¶120-121. Plaintiffs allege that counsel advised Ronald and Debra Brookshire to

were placed in licensed foster care homes or with relatives. *Id.* at ¶96.

[7]It is reasonable to assume that the Youth Court had sufficient legal bases on which to order that the legal custody of the children remain with the MDHS. Harrell admits that on August 27, 2014, the youth court ordered legal custody of the minor Plaintiffs was to remain with MDHS. [Doc. 29] (Answer at ¶113).

begin living separately which they did. *Id.* at ¶134. Plaintiffs claim that while Debra Brookshire visited Ai.B and Ao.B. in September 2014, Harrell cancelled two scheduled visits. *Id.* at ¶135.

Plaintiffs allege that at the next court hearing on October 9, 2014, the Brookshires argued that since they were living separately, their children should be released to Debra. *Id.* at ¶137. Plaintiffs claim Harrell objected to the release of the children to their parents, but the court nevertheless ordered Ai.B. and Ao.B. to be returned to Debra Brookshire's custody.[8] Plaintiffs contend Ai.B. and Ao.B. were separated from their mother for seventy-seven days. *Id.* at ¶142.

Plaintiffs allege that Debra Brookshire's daughter, D.S., was removed from foster care and placed in the custody of her biological father,[9] who had been discharged from his job as a police officer based on a child molestation allegation.  *Id.* at ¶123.  Plaintiffs also allege that Harrell engaged in a romantic relationship with D.S.'s father.  *Id.* at ¶124.

As to the Wards, Plaintiffs allege Harrell abandoned her claim that they were not T.W.'s parents and instead reasoned that because neither Tobias nor Teresa Ward possessed a current driver's license, T.W. could not safely be released to them.[10]  *Id.* at ¶¶126-127.  In response, Plaintiffs claim the Wards did not own a car and were driven to Gulfport by church members.  *Id.* at ¶128.  Next, Plaintiffs assert Harrell knew that an outstanding warrant for the arrest of Tobias Ward was based on a 1998 unpaid traffic citation, yet she claimed T.W. could not be safely released due to the warrant.  *Id.* at ¶¶ 129-130.  The Wards allege they were allowed to visit their daughter

---

[8]Harrell admits that on October 9, 2014 the youth court ordered minors Ai.B. and Ao.B to remain in the temporary custody of MDHS in relative placement with Plaintiff Debra Brookshire.  [Doc. 29](Answer at ¶141).

[9]Harrell admits that on September 2, 2014, the youth court ordered Plaintiff D.S. to be placed in the home of her biological father, John Straight, Sr. [Doc. 29](Answer at ¶123).

[10]Harrell admits that on September 2, 2014, the youth court ordered legal custody of T.W. was to remain with the MDHS.  [Doc. 29](Answer at ¶131).

in September 2014, but Harrell cancelled another visit which was never rescheduled. *Id.* at ¶134. At the October 9, 2014-hearing, Plaintiffs allege the Wards offered no additional evidence of their relationship with T.W. since the prior hearing, yet the court released T.W. to the Wards.[11] *Id.* at 143. Plaintiffs allege T.W. was separated from her parents for seventy-seven days. *Id.* at ¶145.

Regarding Amy Spencer and her children, Plaintiffs allege that Ax.E and Ah.E. were removed from foster care and placed in the custody of their biological father, Adrian. *Id.* at ¶132.[12] Plaintiffs allege that at the October 9, 2014-hearing, Amy Spencer was required to take a drug test at the courthouse based on the prior charge of illegal drug possession. *Id.* at ¶146. Spencer alleges she had not used marijuana while the children were in MDHS custody, although her test was positive for the presence of marijuana. *Id.* at ¶¶148-49. According to Plaintiffs, Harrell argued Spencer's daughters could not safely be returned to her custody due to the positive drug test. *Id.* at ¶150.

Plaintiffs allege that on October 21, 2014, their counsel wrote to Youth Court Judge Alfonso, about problems with Harrell. *Id.* at ¶152. According to Plaintiffs, Judge Alfonso forwarded the letter to Anita Watkins, Harrison County DHS Regional Director, suggesting she consider a change in the worker handling the cases. *Id.* at ¶154-155. Plaintiffs claim that despite the judge's recommendation, Harrell refused to remove herself from the case. *Id.* at ¶156.

Plaintiffs allege the final hearing was held on December 4, 2014, at which time Amy Spencer submitted to a drug test at the courthouse which was positive for the presence of marijuana. *Id.* at

---

[11]Harrell admits that on October 9, 2014, the youth court ordered minor T.W. to remain in the temporary custody of MDHS with the relative placement of T.W. with Tobias and Teresa Ward who were ordered to enter into a service agreement with MDHS, obtain and maintain stable housing and employment, take T.W. to doctor and dentist appointments, cooperate with Georgia DHS and CASA, enroll T.W. in a public school and to address any outstanding tickets or warrants. [Doc. 29](Answer at ¶144).

[12]Harrell admits that on September 2, 2014, the youth court ordered minors Ax.E. and Ah.E. to be placed in the home of their biological father, Adrian Edwards. [Doc. 29](Answer at ¶122).

¶159. Spencer claimed she had not used marijuana since the last hearing. *Id.* at ¶¶158-59. Plaintiffs allege Spencer thereafter left the courthouse, was tested at A.S.A.P. Drug Testing Services, and the test results were negative for any drugs. *Id.* at ¶162. Plaintiffs allege Spencer returned to the courthouse for the hearing and presented her test results. *Id.* at ¶163. Plaintiffs claim that over the objections of MDHS employees Harrell, Fountain, Watkins, and O'Banner, the court, on December 9, 2014, ordered the children to be returned to Spencer, although she was not permitted to take her children home until after the completion of the public-school semester on December 19, 2014.[13] *Id.* at ¶166. Plaintiffs claim Ax.E. and Ah.E. were separated from Spencer for 148 days. *Id.* at ¶168.

## III. Plaintiffs raise six causes of actions.

### First Cause of Action: Plaintiffs T.W., Ax.E. and Ah.E.

These children allege a Fourth Amendment violation of initial seizure without justification, claiming that their seizure at the Gulfport police station was improperly made and lacked a court order, parental consent, probable cause or exigent circumstances. *Id.* at ¶179.

### Second Cause of Action: Plaintiffs Tobias and Teresa Ward and Amy Spencer

The Wards and Amy Spencer allege their rights to care, custody and control of their children under the Fourteenth Amendment were violated when T.W., Ax.E. and Ah.E. were seized without a court order, parental consent, probable cause or exigent circumstances. *Id.* at ¶181.

### Third Cause of Action: Plaintiffs Ronald and Debra Brookshire

The Brookshires assert that their Fourth Amendment right to be secure against unreasonable seizure was violated at the Sleep Inn when Plaintiffs Ai.B. and Ao.B. were seized without a

---

[13]Harrell admits that on December 9, 2014, the youth court ordered legal custody of minors Ax.E. and Ah.E. to be returned to Amy Spencer beginning at Christmas break. [Doc. 29](Answer at ¶165).

reasonable belief they were abused or would suffer further abuse if left in the custody of their parents. *Id.* at ¶183.

**Fourth Cause of Action:  Plaintiffs Ronald and Debra Brookshire**

The Brookshires also claim their rights to the care, custody and control of their children under the Fourteenth Amendment were violated when their children Ai.B. and Ao.B. were taken into MDHS custody from the Sleep Inn hotel without parental consent, probable cause or exigent circumstances. *Id.* at ¶185.

**Fifth Cause of Action:  T.W., Ax.E., Ah.E., Ai.B., and Ao.B.**

These children raise a Fourth Amendment claim for unreasonable and unjustified continued detention, asserting that their continued detention was a violation of the Fourth Amendment. Further, these Plaintiffs allege "Defendants" made "knowing" misrepresentations to the court that they were in "ongoing danger" which was unconscionable and resulted in them being unreasonably detained for periods between seventy-seven and 148 days. *Id.* at ¶187.

**Sixth Cause of Action: Plaintiffs**

Plaintiffs raise a Fourteenth Amendment violation for the continued detention without justification claim, asserting that their right to family integrity and privacy was specifically violated by the separation of T.W. from Tobias and Teresa Ward, of Ai.B and Ao.B from Ronald and Debra Brookshire, and of Ax.E. and Ah.E. from Amy Spencer without probable cause, a medical emergency or other constitutional justification. *Id.* at ¶¶189-191.

Plaintiffs allege "Defendants" violated their Fourteenth Amendment right to integrity and privacy by deliberately changing MDHS's requirements for the return of the children to their parents. *Id.* at ¶192. Plaintiffs claim Harrell and "others" stated that Social Security cards would be sufficient and then birth certificates were needed and after those requirements were satisfied, she

added a back-ground-check and drug testing requirement.  *Id*.

Plaintiffs allege a variety of emotional distress damages, mental pain and suffering and loss of enjoyment of life.  *Id.* at ¶170-177, 193.  Plaintiffs demand compensatory damages, punitive damages, costs and attorney's fees.  *Id.* at p.30.

## IV.   Federal Rule of Civil Procedure 12(b)(6) standard.

Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law.  When suing a state official for constitutional violations, a plaintiff must plead that each government official, though his or her own individual actions, violated the constitution.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  These claims must be supported by enough facts to show "more than a ***sheer possibility*** that a defendant acted unlawfully."  *Id.* (emphasis added).  To meet this standard, a complaint must include more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007).  A plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face.  *Iqbal,* 129 S. Ct. at 1949.  A claim is facially plausible when a plaintiff pleads factual content which allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged.  *Id.*  Where a complaint pleads facts which are merely consistent with a defendant's liability, "it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal citations and quotations omitted).

To decide whether this standard has been met, courts first identify "the allegations in the complaint that are not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1951.  "When there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.  The court may consider explanations for the challenged actions that are equally likely and lawful.  *Id.; Twombly*, 550 U.S.

at 567.  Deciding whether a complaint has stated a plausible claim for relief is a context-specific task, requiring the court to draw on "its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.  Courts disregard bare assertions of collective responsibility, unsupported by concrete factual allegations.  *See Iqbal*, 566 U.S. at 678 ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557)).

## V.      Argument

### A.      Plaintiff D.S. has failed to state a claim against Defendants.

While D.S. is named as a plaintiff in the Amended Complaint, there are no claims or causes of action alleged on behalf of D.S. against Defendants.  The Amended Complaint asserts six claims or cause of action but D.S. is not identified as a plaintiff asserting those claims.  In the absence of any allegations of wrongdoing by Defendants as to D.S., Plaintiffs have failed to state a claim against Defendants and any such claims or causes of actions must be dismissed.  F.R.C.P. 12(b)(6).

### B.      Plaintiffs fail to meet the pleading standard for claims under 42 U.S.C. § 1983 against Defendants.

A § 1983 complaint must state specific facts to support the claim, not merely legal and constitutional conclusions. *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990), cert. denied. 498 U.S. 908 (1990); *Angel v. City of Fairfield*. 793 F.2d 737, 739 (5th Cir. 1986).  To assess a Rule 12(b)(6) motion, the court must first discern from the complaint the factual allegations that are *not* entitled to the assumption of truth.  *National Cas. Co. v. Franklin County*, 718 F. Supp. 2d 785, 787 (S.D. Miss. 2010). The court is not required to accept "unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events." *Id.* (citation omitted).

Plaintiffs fail to allege specific facts as to Defendants' alleged constitutional violations and only make conclusory accusations which cannot be accepted as true.  Other than naming Defendants in the "PARTIES" section of the Amended Complaint, there are only a few paragraphs in the Amended Complaint where Defendants are alleged to have participated in the central claims of the Plaintiffs.  Plaintiffs allege:

> 69.    Defendants refused to release the children to their parents, even though they all presented proof that their children were in fact their children.

This is a legal conclusion disguised as a factual allegation.  There are no facts to support the allegation that Defendants, collectively, refused to release the children.  First, there are no facts that Defendants made any representations to the Youth Court giving rise to the warrant and order issued to place the children into custody.  According to the Amended Complaint, Harrell informed Plaintiff parents she had a warrant and court order to place the children into MDHS custody.  Although Plaintiffs allege they did not "see" the warrant or order, there are no facts suggesting the warrant and order did not exist or were never issued.[14]  Second, there are no facts to support the conclusion that "Defendants," collectively or individually, refused to release the children.  After the children were ordered into MDHS custody, Harrell nor Defendants had authority to release the children without a court order to do so.  Third, this allegation improperly lumps Defendants together, failing to give specific facts of the alleged misconduct of each Defendant which is required to plead a constitutional violation against a state official.  *Iqbal*, 129 S.Ct.  at 1949.

Plaintiffs allege:

> 71.    Defendant O'Banner told Plaintiff Debra Brookshire that "you do not know who you're dealing with, but if you want to get your kids back, you need to leave

---

[14]Indeed, Harrell has admitted that she was given a verbal pick-up order and warrant. [Doc. 28] (Answer at ¶¶51, 54).

that church group."

There are no facts alleged demonstrating O'Banner was involved in the decision to take the children into custody from the police station or the Sleep Inn or that she had any interactions with any of the other parents or children while in MDHS custody. The children were already in MDHS custody pursuant to a youth court order at the time this alleged statement by O'Banner was made. This allegation lacks the necessary factual basis to allow the court to reasonably infer that Defendant O'Banner is liable for any alleged misconduct.

Plaintiffs allege:

91.     Defendants ... , Harris, Anderson, [Morgan], Hoda, Burleson, [Marks-Fairley], and O'Banner misrepresented to the court that there was doubt about the parents' relationships to their children.

92.     Plaintiffs allege that Defendants ... Harris, Anderson; [Morgan], Hoda, Burleson, [Marks-Fairley], and O'Banner misrepresented to the court that the children were in imminent danger.

93.     Because of Defendants' misrepresentations, the court did not allow any of the Plaintiff children to be returned to the custody of Plaintiff parents.

There are no facts to support these allegations. Specifically, there are no facts that Defendants were involved in the decision to place the children into MDHS custody, and there are no facts Defendants were involved in the investigation regarding the parents or the children. Moreover, these allegations improperly group a number of MDHS employees together, alleging they all made the same "misrepresentations" to the youth court about the Plaintiffs. These allegations do not meet the standard for stating a constitutional violation claim against a state employee. Plaintiffs cannot proceed on claims against Defendants in the absence of specific facts and claims of the misconduct of each individual Defendant. *Iqbal*, 129 S.Ct. at 1949.

Plaintiffs allege:

14

112.   At the [August 27, 2016] hearing, Defendants ... , Hoda, Castello, and O'Banner continued to make misrepresentations to the court about the "imminent danger" the children were in.

Again, there are no facts to support this allegation.  Particularly, there are no facts alleged that Hoda, Castello and O'Banner were involved with the children, the parents or the investigation of matters regarding the custody of the children to reasonably infer Defendants are liable for the alleged misconduct.

Plaintiff alleged:

154.   Judge Alfonso took the unusual step of forwarding the letter to Anita [Watkins], the Regional Director of Harrison County DHS and suggesting that "to avoid any appearance of impropriety you should consider a change" in the worker handling the cases.

155.   Judge Alfonso noted that the attorney's letter "brings into question the integrity of our joint processes."

156.   Despite the judge's recommendation, Defendant Harrell refused to remove herself from the case.

These allegations fail to assert any misconduct by Watkins *at all*. These allegations only state Watkins received correspondence from Judge Alfonso. There are no allegations Watkins ignored Judge Alphonso's recommendation or failed to act on the letter.  Simply put, Plaintiffs have failed to allege or state any claim against Watkins and any such claim must be dismissed.

Plaintiffs allege:

164.   Defendants ... , Fountain, [Watkins], and O'Banner still objected to releasing Spencer's children to her.

This "factual allegation" is a naked assertion with no "factual enhancement."  No facts are alleged in the Amended Complaint that these three (3) Defendants were involved in the investigation of issues which gave rise to the youth court's warrant and order to place the children into MDHS custody or were involved in the subsequent investigations and handling of the matters with

15

Plaintiffs.  In the absence of a factual basis to allow the court to reasonably infer these Defendants are liable for the suggested misconduct, the claims against these Defendants must be dismissed.

Plaintiffs' Amended Complaint must be dismissed because it contains sparse facts as to what wrongful conduct is attributed to each of the Defendants, and does not identify which legal claims are being pursued against which individual Defendant with the facts supporting each claim. Plaintiffs were required to plead "specific facts" regarding their 42 U.S.C. § 1983 action against Defendants and failed to do so.  As a result, Defendants and the court are unable to clearly discern which facts allegedly support which claims alleged against them.  Therefore, Plaintiffs Amended Complaint should be dismissed for the failure to state a claim.  F.R.C.P. 12(b)(6).

### C.    Plaintiffs' "causes of action" fail to state a claim against Defendants.

The Amended Complaint reflects Plaintiffs' "lumping of Defendants together" and asserting identical allegations as to each without distinction.  All of Plaintiffs' causes of actions attempt to assert claims against "Defendants" collectively.  This type of pleading is not permitted in suits against state officials for constitutional violations; rather, a plaintiff is required to plead specifically that each government official, though his or her own individual actions, violated the constitution. *Iqbal*, 129 S.Ct. at 1949.  This type of collective pleading prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions.  "As the Seventh Circuit recently noted, "liability is personal." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).  Notice pleading under the Federal Rules of Civil Procedure entitles "each defendant ... to know what he or she did that is asserted to be wrongful... " *Id.*  Allegations based on a "theory of collective responsibility cannot withstand a motion to dismiss. *Id.* (affirming dismissal of complaint

alleging that collectively responsibility as to all defendants).[15] Claims against state officials for constitutional violations must allege that each government official, though his or her own individual actions, violated the constitution. *Iqbal*, 129 S.Ct. at 1949. Because Plaintiffs' causes of action are pled against Defendants collectively, Plaintiffs fail to meet the pleading requirements for constitutional claims such that these claims should be categorically dismissed. F.R.C.P. 12(b)(6).

### D.    The Amended Complaint is inadequately pled to overcome a qualified immunity defense.

Qualified immunity is a well-settled doctrine that protects governmental employees acting within their discretionary authority if their actions do not violate clearly-established statutory or Constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). Qualified immunity protects officials from liability in civil actions, and from having to withstand the burdens of broad ranging discovery and a trial. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). Further, qualified immunity allows state officials to exercise their official duties with independence and without fear of personal liability and harassing lawsuits against them. *Elliott v. Perez*, 751 F.2d 1472, 1476-77 (5th Cir. 1985). By providing governmental employees with the ability to reasonably anticipate when their acts or omissions may give rise to liability and damages, qualified immunity provides protection to all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs,* 475 U.S. 334, 341(1986). A government official is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions. *McClendon v. City of Columbia*,

---

[15]Citing *Zola H. v. Snyder*, No. 12-14073, 2013 WL 4718343, at *7 (E.D. Mich. Sept. 3, 2013) (dismissing complaint that lumped defendants together and failed "to impute concrete acts to specific litigants"); *Petri v. Kestrel Oil & Gas Properties, L.P.*, No. CIV.A. H-09-3994, 2011 WL 2181316, at *7 (S.D. Tex. June 3, 2011) ("Defendants ... are entitled ... adequate notice of the claims against them, as well as factual pleading distinguishing plausible claims against each Defendant individually.").

305 F.3d 314, 323 (5th Cir. 2002).  If officials act in an objectively reasonable manner, it does not matter if the officials' conduct violated a constitutional right; he is still entitled to qualified immunity. *Venuto v. Jackson County*, 2014 U.S. Dist. LEXIS 147422 (S.D. Miss. Oct. 16, 2014)(citing *Nerren v. Livingston Police Dep't.*, 86 F.3d 469, 473 (5th Cir. 1996)).

As a threshold matter, the district court must find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir.1995). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648  (5th Cir. 2012).  Plaintiffs have failed to do so here and the allegations in the Amended Complaint do not meet the threshold of asserting sufficient facts to overcome Defendants' qualified immunity defense.

Other than making bare naked allegations about making certain representations to the youth court, there are literally no facts alleged as to Defendants O'Banner, Castello, Burleson, Bowie, Marks-Fairley, Watkins, Morgan, Hoda, Fountain, Anderson, and Harris to permit the Court to draw reasonable inferences that Defendants are liable for the harm alleged to defeat qualified immunity. Even if read liberally and in its entirety, the Amended Compliant fails to plead any facts with regard to Defendants' alleged unlawful seizure and detention of the children.  Rather than identifying specific acts of misconduct by Defendants individually, the Amended Complaint rests largely on allegations of collective wrongdoing by Defendants and the causes of action are directed toward "Defendants" as a group.  For instance, Plaintiffs allege that "Defendants' continued detention of the minor Plaintiffs violated the Fourth Amendment." [Doc. 1](Complaint at ¶187).   They further allege that "Defendants seizure of the minor children ... violated the Plaintiffs' Fourth Amendment

rights[s] . . ." (*Id.* at ¶179) and "Defendants violated Plaintiffs' Fourteenth Amendment right[s] . . . *Id.* at ¶¶189-192.

"This pleading structure—lumping all defendants together and asserting identical allegations as to each, without distinction—largely prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions." *Cain v. City of New Orleans*, CV 15-4479, 2016 WL 2849498, at *5 (E.D. La. May 13, 2016). Without any distinction between the alleged misconduct of each of the Defendants, the Court and Defendants are unable to discern the specific conduct of each Defendant which allegedly violated a constitutional right of any Plaintiff. Consequently, Plaintiffs' Amended Complaint must be dismissed for the failure to state a claim for which relief can be granted. F.R.C.P. 12(b)(6).

## VI.   Conclusion

It is reasonably discernable from the Amended Complaint that the Gulfport Police Department was called about a group of unsupervised children who were found panhandling in Gulfport. MDHS was contacted and arrived to assess the situation with the children. Upon having "too many conflicting" stories about the children, a lack of information of who and where their parents were and arising suspicion and reasonable belief the children were being trafficked, the Harrison County Youth Court determined there was probable cause to believe that the children were at risk of abuse or neglect and possibly being trafficked, resulting in the youth court's warrant and order for placement of the children in MDHS custody. Subsequent investigations revealed inconsistencies in the addresses of the parents and the children, a parent was not identified on a child's birth certificate, there was outstanding arrest warrant for a parent and a positive drug test result as to another parent. After even further investigation, MDHS did not have sufficient information needed to release the children as the Youth Court ordered the children to be kept in

19

MDHS custody until they were released on October 9, 2014 and December 19, 2014, respectively.

Defendants O'Banner, Castello, Burleson, Bowie, Marks-Fairley, Watkins, Morgan, Hoda, Fountain, Anderson and Harris' roles in the children's placement with MDHS cannot be ascertained by the Amended Complaint. Defendants are grouped together in allegedly making "misrepresentations" to the Youth Court, yet there are no facts alleged which demonstrate Defendants were involved in the decisions to take the children into MDHS custody, retain the children in MDHS custody or had any contact or involvement with the Plaintiffs. As a result, Plaintiffs fail to state a 42 U.S.C. § 1983 claim and fail to allege sufficient facts to overcome Defendants' qualified immunity defense. Defendants are entitled to a Federal Rule of Civil Procedure 12(b)(6) dismissal and respectfully request that the court dismiss with prejudice all claims against them.

Respectfully submitted, this the 15th day of September, 2017.

**DEFENDANTS CAROLYN O'BANNER, IN HER PERSONAL CAPACITY, MARY LOUIS CASTELLO, IN HER PERSONAL CAPACITY, PATRICIA BURLESON, IN HER PERSONAL CAPACITY, ANGELA BOWIE, IN HER PERSONAL CAPACITY, KIMMONICA MARKS-FAIRLEY, IN HER PERSONAL CAPACITY, ANITA WATKINS, IN HER PERSONAL CAPACITY, DENISE MORGAN, IN HER PERSONAL CAPACITY, LANA HODA, IN HER PERSONAL CAPACITY, ANGELA FOUNTAIN, IN HER PERSONAL CAPACITY, AND JOY RICHARDSON HARRIS, IN HER PERSONAL CAPACITY**

**BY:   PAGE, MANNINO, PERESICH & McDERMOTT, P.L.L.C.**

**_s/ Stephen G. Peresich_____**
**STEPHEN G. PERESICH, (MSB # 4114)**
**JOHANNA M. MCMULLAN, (MSB # 9901)**

20

PAGE, MANNINO, PERESICH,
& McDERMOTT, P.L.L.C.
Post Office Drawer 289
Biloxi, MS 39533
(228) 374-2100
(228) 432-5539
stephen.peresich@pmp.org
johanna.mcmullan@pmp.org

## CERTIFICATE OF SERVICE

I, Stephen G. Peresich, of the law firm of Page, Mannino, Peresich & McDermott, P.L.L.C., do hereby certify that I have this day electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to the following ECF participants:

**_Attorney for Plaintiffs_**
D. Scott Gibson
D. Scott Gibson, Attorney at Law
P. O. Box 1270
Wiggins, MS 39577
scott@dscottgibsonlaw.com

**_Attorney for Plaintiffs_**
James R. Mason, III
Home School Legal Defense Association
P.O. Box 3000
Purcellville, VA 20134
jim@hslda.org

**_Attorney for Plaintiffs_**
Peter K. Kamakawiwoole, Jr.
Home School Legal Defense Association
P.O. Box 3000
Purcellville, VA 20134
peterk@hslda.org

**_Attorney for Plaintiffs_**
Darren A. Jones
Home School Legal Defense Association
P.O. Box 3000
Purcellville, VA 20134
darren@hslda.org

**_Attorneys for Philana Harrell_**
William E. Whitfield, III
Kaara L. Lind
Copeland, Cook, Taylor & Bush, P.A.
2781 C.T. Switzer Sr. Dr.
Biloxi, MS 39531
bwhitfield@wewiii.net
mtownsley@cctb.com

**_Attorney for Carolyn O'Banner,_**
**_Mary Louis Castello and Patricia Burleson_**
Harold E. Pizetta
Office of the Attorney General
550 High Street
Jackson, MS 39201
hpizz@ago.state.ms.us

This the 15th day of September, 2017.

_s/ Stephen G. Peresich_
STEPHEN G. PERESICH

PAGE, MANNINO, PERESICH,
& McDERMOTT, P.L.L.C.
Post Office Drawer 289
Biloxi, MS 39533
(228) 374-2100
(228) 432-5539
stephen.peresich@pmp.org